UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOAN TERESA KESSLER,

                       Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-4264 (JMA)

**FILED
CLERK**

3/13/2020 3:20 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

    Howard D. Olinsky
    Olinsky Law Group
    250 South Clinton Street, Suite 210
    Syracuse, NY 13202
        *Attorney for Plaintiff*

    Candace Scott Appleton
    Richard P. Donoghue, United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
        *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Joan Teresa Kessler ("Plaintiff") seeks review of the final determination by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), finding that Plaintiff was not eligible for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The parties have filed cross-motions for judgment on the pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

# I. BACKGROUND

## A. Procedural History

On November 12, 2013, Plaintiff filed applications for DIB and supplemental security income ("SSI") with the Social Security Administration ("SSA"), alleging disability as of December 1, 2012, due to back problems, diabetes, nerve damage in her right leg, lung problems, vision problems, high blood pressure, and depression. (Tr. 189–91, 202[1].) On December 25, 2013, the SSA denied Plaintiff's SSI application because she failed to meet financial, non-medical criteria. (Tr. 99–107.) On April 17, 2014, the SSA denied Plaintiff's claim for DIB because she was found not disabled. (Tr. 108–14.) Following denial of her claim, Plaintiff requested a hearing before an ALJ on May 6, 2014. (Tr. 116–17.) On December 21, 2015, Plaintiff and her attorney appeared before ALJ April Wexler for a hearing at which vocational expert ("VE") Rocco Meola testified. (Tr. 47–81.)

In a January 13, 2016 decision, ALJ Wexler denied Plaintiff's claim, finding that she was not disabled. (Tr. 13–23.) On March 10, 2016, Plaintiff requested that the Appeals Council review ALJ Wexler's decision. (Tr. 186–88.) The Appeals Council denied Plaintiff's request for review on May 16, 2017, making ALJ Wexler's decision the final decision of the Commissioner. (Tr. 1–3.) This appeal followed.

## B. Factual Background

Because this case will be remanded for further proceedings, only the evidence relevant to that determination is recounted here.

Plaintiff was born in 1963 and was forty-nine years old at the time of the onset of her alleged disability. (Tr. 189.) She attained a GED and became ASC certified in 1999. (Tr. 203.)

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 9.)

Plaintiff's past relevant work was as a home health aide, a store sales associate, a server, and a self-employed car mechanic. (Tr. 51–52, 204, 219, 240.) She testified that she became unable to work in 2012 and had not worked since then. (Id.) In a function report dated December 29, 2013, Plaintiff reported having back and right shoulder pain that affected her ability to perform daily activities and self-care. (Tr. 208–18.)

**C.     Medical Treatment**

    **1. Objective Imaging Studies**

The record contains several objective imaging studies, some of which include:

- A June 19, 2013 x-ray of the lumbosacral spine, showing mild degenerative changes at the L4-L5 level, and L5 was transitional in configuration. (Tr. 249.)

- A September 5, 2013 MRI of the right shoulder, showing mild acromioclavicular hypertrophy with mild bursitis, partial bursal surface tear of the distal supraspinatus tendon, low-grade partial tear of the superior fibers of the subscapularis tendon, and the intraarticular bicep tendon was perched medially. (Tr. 252.)

- A September 5, 2013 x-ray of the chest, showing a four-millimeter nodule in the right mid-lung. (Tr. 250.)

- A September 6, 2013 MRI of the lumbar spine, showing an L4-L5 diffuse disc bulge with left extraforaminal broad based disc herniation without significant spinal canal stenosis, mild-to-moderate left greater than right foraminal stenosis, mild disc desiccation, increased left facet joint fluid, transitional L5 vertebral body, and an eight-millimeter right L1-L2 cyst. (Tr. 341.)

- An October 24, 2013 CT-scan of the chest, showing fine reticular patterns throughout the lungs, calcified granuloma on a nodule in the right mid-lung, several other nodules, and arteriosclerotic changes of the aorta. (Tr. 253–54.)
- A February 8, 2014 echocardiogram, showing mild insufficiency in the mitral and tricuspid valves. (Tr. 306–07.)

**2. Medical Opinions**

**a. Plaintiff's Physical Impairments**

Ryan Baker, a physician's assistant in the office of Edwardo Yambo, M.D., treated Plaintiff on several occasions throughout 2013 and 2014. (Tr. 288–324.) He completed a questionnaire dated November 21, 2013. (Tr. 256–57.) Plaintiff's symptoms were shoulder and back pain. (Tr. 256.) Mr. Baker indicated that in a workday, Plaintiff could sit for a total of four hours (thirty minutes at a time), stand/walk for four hours (fifteen minutes at a time), and never lift/carry any weight. (Tr. 256–57.) He opined that Plaintiff could grasp, turn/twist objects, perform fine manipulation, and reach five percent of the day with her right arm/hand and ten percent of the day with her left arm/hand. (Tr. 257.) Mr. Baker believed that Plaintiff could be absent from work more than four times per month and was incapable of full-time work on a sustained basis. (Id.) Mr. Baker also submitted a visual acuity questionnaire, opining that Plaintiff did not meet the criteria for Listings 2.02, 2.03, or 2.04. (Tr. 261.)

Dr. Yambo treated Plaintiff between December 18, 2013 and September 1, 2014. (Tr. 289–324.) On September 8, 2014, he completed a questionnaire and offered opinions that were identical to those of Mr. Baker. (Tr. 283–84.) Dr. Yambo stated that Plaintiff's symptom was back pain. (Tr. 284.) In a workday, Plaintiff could sit for a total of four hours (thirty minutes at a time), stand/walk for four hours (fifteen minutes at a time), and never lift/carry any weight. (Tr. 283–

4

84.) He also said that she would need to lie down or take unscheduled breaks. (Id.) Dr. Yambo opined that Plaintiff could grasp, turn/twist objects, perform fine manipulation, and reach five percent of the day with her right arm/hand and ten percent of the day with her left arm/hand. (Tr. 284.) He found that Plaintiff could be absent from work more than four times per month and was incapable of full-time work on a sustained basis. (Id.)

Plaintiff also participated in a consultative internal medicine examination with Kanista Basnayake, M.D. on February 7, 2014. (Tr. 266–72.) Plaintiff complained of low back pain since November 2012, which was shooting in nature and radiated down to the toes on her right side. (Tr. 266.) She also reported having aching pain in her right shoulder. (Id.) Dr. Basnayake noted Plaintiff's history of diabetes and high blood pressure. (Id.) Plaintiff reported experiencing hiatal hernia and incontinence. (Id.) Plaintiff told Dr. Basnayake she had smoked for over twenty-five years and complained of shortness of breath for the past four-to-six years. (Tr. 267.) She said she had depression and anxiety since childhood. (Tr. 266.) Because of difficulty standing, she struggled to perform housework. (Id.)

On examination, Plaintiff's blood pressure was 170/80, and she was advised to follow-up with her primary care doctor within the next few weeks. (Id.) Her uncorrected vision was 20/200 in the right eye, 20/100 in the left eye, and 20/100 in both eyes. (Id.) She walked with a limp and dragged her right leg, but it improved when she used her cane, which Dr. Basnayake noted was medically necessary. (Id.) Plaintiff could not walk on her heels and toes and could squat one-half way down. (Id.) Plaintiff exhibited a full range of motion in the cervical spine, elbows, wrists, hands, knees, and ankles, but had a limited range of motion in the lumbar spine, shoulders (right more than left), and hips. (Id.) Plaintiff had negative straight leg raising on her left leg and positive leg raising on her right leg. (Id.) Plaintiff had edema in both lower legs and feet. (Id.) X-rays of

5

her lumbosacral spine showed degenerative changes of a grade I spondylolisthesis of L5 over S1 and facet joint arthropathy. (Tr. 271.) Dr. Basnayake diagnosed Plaintiff with diabetes, hiatus hernia, urinary incontinence, high blood pressure, right shoulder pain, and low back pain with radiation to the right leg. (Id.) Dr. Basnayake wrote that "due to back pain and right shoulder pain," she believed Plaintiff had moderate to marked limitations in sitting, standing, walking, climbing, carrying, and lifting. (Id.)

Plaintiff also visited C. Scott Hall, M.D. on January 7, 2014 with the chief complaint of dyspnea. (Tr. 278.) Dr. Hall noted that changes on Plaintiff's CAT scan were likely inflammatory, and her symptoms were either from asthma or smoking. (Tr. 280.) He ordered follow-up testing and prescribed Ventolin and Pulmicort. (Id.)

Robert Leahy, D.C., a chiropractor, examined Plaintiff on July 14, 2015. (Tr. 335–39.) Plaintiff reported pain in the neck, trapezius, and back after being involved in a motor vehicle accident. (Tr. 336.) On examination, Plaintiff had spasm and trigger points. (Tr. 337.) She had right shoulder depression, and her left impingement test was positive. (Id.) Straight leg raising was positive. (Id.) Dr. Leahy noted a limited range of motion in the knee. (Id.) Plaintiff had 4/5 (full range of motion/moderate resistance) strength in the right deltoid, triceps, biceps, hand, calf, feet, left quadriceps, and hamstrings, but had 3/5 (perceptible weakness) strength in the right quadriceps and hamstrings. (Tr. 338.) Plaintiff's deep tendon reflexes were generally diminished, and Plaintiff had hypoesthesia findings in her right dermatomes. (Id.)

At the request of the Commissioner, Barry Zuckerman, M.D. completed an interrogatory as a medical expert regarding Plaintiff's vision on November 28, 2015. (Tr. 355–57.) He opined that there was no evidence in the record to substantiate a visual impairment that caused limitations. (Id.) Dr. Zuckerman gave no opinion regarding any of Plaintiff's other physical impairments.

### b. Plaintiff's Mental Impairments

In a mental capacity assessment, dated November 21, 2013, Mr. Baker opined that Plaintiff had slight impairments in all areas of memory and understanding, social interaction, and adaptation and most areas in sustained concentration and persistence. (Tr. 258–60.) He also found that Plaintiff had moderate limitations performing at a consistent pace with a standard number and length of rest periods. (Tr. 259.) Mr. Baker expected Plaintiff to have two absences per month. (Id.)

Shashi Berdia, M.D. performed an initial psychiatric evaluation on Plaintiff on July 7, 2014. (Tr. 343.) Plaintiff recounted that she was diagnosed with bipolar disorder at a young age and was experiencing depression. (Id.) Plaintiff told Dr. Berdia that she has taken various medications since 1985 to treat her mental impairments. (Id.)

Gerry Polito, LCSW, also completed a mental capacity assessment, dated September 16, 2014. (Tr. 359–61.) Plaintiff had visited Mr. Polito seeking treatment for anxiety and complaining about difficulty sleeping and becoming frustrated easily. (Tr. 357.) He diagnosed Plaintiff with bipolar disorder. (Tr. 361.) Mr. Polito opined that Plaintiff had slight limitations making simple decisions and moderate limitations in remembering locations and processes, carrying out detailed instructions, and generally maintaining social interaction. (Id.) He found that Plaintiff had marked limitations in maintaining concentration for extended periods, performing activities within a schedule, sustaining ordinary routines, completing a normal workday or workweek without interruption of psychological symptoms, responding appropriately to changes, and traveling to unfamiliar places or using public transit. (Tr. 359–61.)

Paul Herman, Ph.D., performed a consultative psychiatric examination on February 7, 2014. (Tr. 262–65.) Plaintiff complained of difficulty sleeping, weight gain, and loss of appetite.

(Tr. 262.) During the mental status examination, Plaintiff presented as cooperative and as having adequate social skills. (Tr. 263.) She displayed coherent and goal-directed thought content and had a neutral mood with an appropriate affect. (Tr. 263–64.) Attention and concentration were "somewhat below average." (Tr. 264.) Plaintiff counted and performed simple calculations, but could not perform serial threes. (Id.) Plaintiff had poor remote memory skills, but intact recent memory skills. (Id.) Her insight and judgment were fair to good. (Id.) Dr. Herman did not give a psychiatric diagnosis. (Tr. 265.) He wrote that Plaintiff appeared to be somewhat tense and sad, but these symptoms did not interfere with her functioning. (Id.)

### C.     The Commissioner's Decision

ALJ Wexler applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Tr. 13–23.) ALJ Wexler first indicated that Plaintiff met the insured status requirements through March 31, 2016, and had not engaged in substantial gainful activity since her alleged onset date of December 1, 2012. (Tr. 15.) Next, at step two, she found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, supraspinatus and subscapularis tendon tears in the right shoulder, a history of asthmatic bronchitis, and bipolar disorder. (Id.) ALJ Wexler also noted that Plaintiff alleged that she suffered from diabetes and vision issues, but found these conditions non-severe. (Id.) At step three, ALJ Wexler determined that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any listed impairments. (Tr. 16–17.)

Before moving to step four, ALJ Wexler assessed Plaintiff's residual functional capacity ("RFC"). (Tr. 17.) ALJ Wexler determined that Plaintiff had the RFC to perform light work, except that "she is limited to simple routine repetitive tasks, occasional overhead reaching with the

right upper extremity and would need the ability to use a cane for ambulation" and "[m]ust avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation." (Id.)

In finding that Plaintiff was limited to light work with these restrictions, ALJ Wexler considered the opinions of several medical sources and assigned "very little weight" to the opinions of Mr. Baker and Dr. Yambo and "little weight" to the opinion of Dr. Basnayake. As to Plaintiff's mental impairments, ALJ Wexler gave "very little weight" to the opinion of Mr. Polito, who completed a mental capacity assessment, and "great weight" to the opinion of Dr. Herman, who performed a consultative psychiatric examination. (Tr. 20–21.)

ALJ Wexler then addressed step four. Based on her RFC determination and the VE's testimony, ALJ Wexler concluded that Plaintiff could not perform her past relevant work. (Tr. 21–22.) At step five, ALJ Wexler relied on the VE's testimony to determine that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including work as a scale operator (DOT 555.687-010), a sealing machine operator (DOT 690.685-154), or a weld inspector (DOT 724.685-014) at the light level. (Tr. 22–23.) Accordingly, ALJ Wexler found Plaintiff not disabled. (Tr. 23.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

9

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. §§ 404.1520, 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**B.     Scope of Review**

In reviewing a denial of disability benefits, the Court's function is not to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting

inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). Thus, the Court will not look at the record "in isolation but rather will view it in light of other evidence that detracts from it." State of N.Y. ex rel. Bodnar v. Sec'y of Health & Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). A reviewing court will affirm an ALJ's decision based on "adequate findings supported by evidence having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C.    Analysis**

Plaintiff challenges the Commissioner's determination for two reasons: (i) that ALJ Wexler's RFC is not supported by substantial evidence, and (ii) that ALJ Wexler's credibility analysis is not supported by substantial evidence. (Pl. Mem. of Law, ECF No. 11-1 at 1.) The Court agrees that ALJ Wexler's RFC analysis is unsupported by substantial evidence because ALJ Wexler failed to properly weigh the medical opinion evidence. Remand is therefore warranted.[2]

**1. Applicable Law**

An RFC determination specifies the "most [a Plaintiff] can still do despite [the Plaintiff's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)

---

[2] Because the Court remands based on Plaintiff's first argument, the merits of Plaintiff's second argument are not addressed here.

11

(describing an RFC determination as indicating the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

"[T]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, an RFC assessment is based on a review of the entire record. See 20 C.F.R. § 404.1527(d)(2). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1.

2. **ALJ Wexler's Decision to Give Little Weight to Dr. Basnayake's Opinion Is Not Supported by Substantial Evidence**

ALJ Wexler erred in giving only "little weight" to Dr. Basnayake's opinion. While Dr. Basnayake was not a treating physician, she set forth a medical opinion that should have been analyzed using the same factors considered when evaluating a treating physician's opinion. See 20 C.F.R. § 404.1527(c). Among the factors an ALJ must consider when evaluating medical opinion evidence are: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted).

ALJ Wexler did not adequately consider these factors when assessing the weight to give Dr. Basnayake's opinion. ALJ Wexler wrote with respect to Dr. Basnayake: "I gave this opinion

little weight, as it is based on the claimant's subjective pain and not objective testing. It is inconsistent with the fact that the claimant has had very little treatment for these conditions." (Tr. 21.) This terse analysis fails to accurately reflect Dr. Basnayake's opinion and shows that ALJ Wexler failed to properly weigh it.

There is no indication in Dr. Basnayake's report that her opinion was based only on the Plaintiff's subjective complaints. Dr. Basnayake's examination revealed several abnormal findings, including that Plaintiff limped and dragged her right leg; she required use of a cane for walking, weightbearing, and balance; and she could not walk on her heels or toes, as she would lose balance. (Tr. 268.) Dr. Basnayake also found that Plaintiff had limited range of motion in the lumbar spine and hips and a positive straight leg raising test on the right leg. (Tr. 269.) In addition, Dr. Basnayake observed swelling in Plaintiff's legs and feet. (Id.) ALJ Wexler ignored these relevant medical signs and pieces of objective evidence that support Dr. Basnayake's opinion.

Additionally, Dr. Basnayake's opinion is consistent with other aspects of the record. Dr. Yambo, Plaintiff's treating physician, found that Plaintiff could sit for a total of four hours (thirty minutes at a time), stand/walk for four hours (fifteen minutes at a time), and never lift/carry any weight. (Tr. 283–84.) Similarly, Dr. Basnayake opined that Plaintiff would have moderate to marked limitations in sitting, standing, walking, carrying, and lifting. (Tr. 270.) In giving Dr. Basnayake's opinion only "little weight," ALJ Wexler failed to recognize the consistency of Dr. Basnayake's opinion with the rest of the record, including the opinion of Plaintiff's treating physician.

ALJ Wexler's rationale for giving little weight to Dr. Basnayake's opinion because Plaintiff sought little treatment for her condition is also flawed. The records indicate that Plaintiff

13

was prescribed powerful narcotic pain medications by her doctor, Dr. Yambo, which included Morphine. (Tr. 242.) Moreover, nothing in Dr. Yambo's records or elsewhere in the record indicates that there were other treatments available to Plaintiff that she could have sought instead.[3] ALJ Wexler's reasoning for giving little weight to Dr. Basnayake's opinion is therefore flawed.

### 3. ALJ Wexler's RFC Analysis Is Not Supported by Any Medical Opinion

No medical opinion in the record provides support for ALJ Wexler's RFC analysis. Both Dr. Yambo, Plaintiff's treating physician, and PA Baker found that in a workday Plaintiff could sit for a total of four hours (thirty minutes at a time), stand/walk for four hours (fifteen minutes at a time), and never lift/carry any weight. (Tr. 256–57, 283–84.) Dr. Basnayake opined that Plaintiff would have moderate to marked limitations in sitting, standing, walking, carrying, and lifting. (Tr. 270.) ALJ Wexler's finding that Plaintiff is capable of working at the light exertional level contradicts the medical opinions in the record. The opinions of the medical professionals who found that Plaintiff had limitations in sitting, standing, walking, lifting, and carrying do not comport with the sitting, standing, and walking capabilities necessary to perform light work as defined in the relevant regulation[4] or ALJ Wexler's finding that Plaintiff could lift and carry up to twenty pounds for one-third of an eight-hour day. (Tr. 18.)

It is generally within an ALJ's discretion to determine the weight assigned to the opinions of medical experts. Given the record here, however, it was error for ALJ Wexler to assign little or

---

[3] Plaintiff also argues that ALJ Wexler failed to develop the record with respect to Dr. Yambo's opinion. (Pl. Mem. of Law, ECF No. 11-1 at 11.) Plaintiff has identified no outstanding record from Dr. Yambo that has not been supplied. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

very little weight to the medical sources who opined on Plaintiff's physical limitations and to then interpret the raw medical data on her own to form a medical opinion. See Kneeple v. Colvin, 14-CV-33, 2015 WL 7431398 at *6 (W.D.N.Y. Nov. 23, 2015) ("Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567[ (a)-(e) ] . . . the Commissioner may not make the connection himself.") (quotation and alterations omitted); Hazlewood v. Comm'r of Soc. Sec., No. 12-CV-798, 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) ("The ALJ is not qualified to assess a plaintiff's RFC on the basis of bare medical findings, and where the medical findings in the record merely diagnose a plaintiff's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") The record contains no competent medical opinion that supports a finding that Plaintiff was capable of performing the requirements for work at the light exertional level. As a non-physician, ALJ Wexler's circumstantial critique, "however thorough or responsible," was not "overwhelmingly compelling in order to overcome a medical opinion." Riccobono v. Saul, No. 19-909-CV, 2020 WL 1042221(2d Cir. Mar. 4, 2020) (quoting Wagner v. Secretary of Health and Human Servs., 906 F.2d 856, 862 (2d Cir. 1990)). ALJ Wexler "failed to meet that high burden when she relied solely on her lay interpretation of the diagnostic tests and other non-medical evidence." Id. Accordingly, remand is warranted.

**4. ALJ Wexler Did Not Err in Giving "Very Little Weight" to Mr. Polito's Opinion**

With respect to Plaintiff's mental functioning, Plaintiff challenges the "very little weight" ALJ Wexler gave to Mr. Polito's opinion because, she claims, the record is not fully developed. (Pl. Mem. of Law, ECF No. 11-1 at 13.) ALJ Wexler explained that she gave the report of Mr. Polito, "the social worker who saw the claimant once in 2014, before closing her case due to

noncompliance," very little weight because it was inconsistent with Mr. Polito's prior findings as well as those of the consultative examiner, Dr. Herman. (Tr. 21.)

First, Plaintiff claims that the record of Mr. Polito's treatment is not fully developed. Since Mr. Polito's mental capacity assessment was dated September 16, 2014, Plaintiff argues that it "was clearly based on more than one appointment." (Pl. Mem. of Law, ECF No. 11-1 at 13.) The record, however, only contains Mr. Polito's treatment notes for June 24, 2014, and he wrote that Plaintiff "made a unilateral decision to terminate her treatment." (Tr. 353.) There thus appear to be "no obvious gaps in the administrative record" that ALJ Wexler should have sought to develop further with respect to Mr. Polito. See Petrie, 412 F. App'x at 406.

Additionally, ALJ Wexler did not err in determining that Mr. Polito's opinion was inconsistent with the findings of Dr. Herman and Mr. Polito's own treatment records. Dr. Herman opined that Plaintiff's psychological perspective was fair "given an absence of significant impact on functioning and psychiatric symptomatology," but noted that she had "problematic current circumstances" in her personal life. (Tr. 265.) Mr. Polito's treatment notes of his mental status evaluation indicated that Plaintiff could "gain from psychotherapy and pharmacotherapy," but explained that her "cognitive functions and long and short term memory are intact." (Tr. 349–51.) These records do not appear consistent with Mr. Polito's mental capacity assessment detailing Plaintiff's marked limitations. (Tr. 359–61.) Accordingly, the Court does not find error in how ALJ Wexler weighed Mr. Polito's opinion.

## III. CONCLUSION

On remand, the Commissioner is directed to properly consider the opinion of Dr. Basnayake and to reassess Plaintiff's RFC in light of the record as a whole, including the objective medical findings. The Commissioner may wish to call a non-examining medical expert to review this case and/or have Plaintiff examined by a consultative doctor specializing in orthopedics.

The Court makes no determination regarding ALJ Wexler's initial assessment of Plaintiff's credibility because this assessment may change on remand when the medical opinions are properly analyzed, and any new evidence is considered. Further, since remand is based on ALJ Wexler's assessment of Plaintiff's physical impairments, the Commissioner, in reweighing the medical opinions, may also wish to consider Plaintiff's argument that the record of Plaintiff's mental impairments should be further developed and reweighed. (Pl. Mem. of Law, ECF No. 11-1 at 13.)

Additionally, the Court will not grant Plaintiff's request to remand for calculation of benefits because the record does not lead to the definitive conclusion that Plaintiff is disabled. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not entirely persuasive with respect to the plaintiff's disability).

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion.

The Clerk of Court is respectfully directed to enter judgment accordingly.

**SO ORDERED.**

Dated: March 13, 2020
       Central Islip, New York

                                               /s/ (JMA)
                                           JOAN M. AZRACK
                                           UNITED STATES DISTRICT JUDGE